## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CRAIG WILSON #119853**                    **CIVIL ACTION**

**versus**                                  **NO. 06-890**

**BURL CAIN, WARDEN**                        **SECTION: "A" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Craig Wilson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On December 2, 1998, he was convicted of attempted manslaughter in violation of La.Rev.Stat.Ann. § 14:(27)30.1.[1] On May 4, 1999, he was found to be

---

[1] State Rec., Vol. III of V, transcript of December 2, 1998, p. 89; State Rec., Vol. II of V, minute entry dated December 2, 1998; State Rec., Vol. II of V, jury verdict form.

a second offender and was sentenced as such to a term of forty years imprisonment without benefit of probation or suspension of sentence.[2]  On May 11, 2001, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3]  He then filed with the Louisiana Supreme Court a related writ application[4] which was denied on September 13, 2002.[5]  He also filed a *pro se* motion for rehearing[6] which was denied on June 27, 2003.[7]

On February 25, 2004, petitioner filed with the state district court an application for post-conviction relief,[8] which was denied.[9]  The Louisiana First Circuit Court of Appeal denied a related writ application on October 18, 2004,[10] as did the Louisiana Supreme Court on December 16, 2005.[11]

---

[2] State Rec., Vol. III of V, transcript of May 4, 1999, pp. 13-14; State Rec., Vol. II of V, minute entry dated May 4, 1999.

[3] State v. Wilson, No. 2000 KA 2002 (La. App. 1st Cir. May 11, 2001) (unpublished); Supplemental State Rec., Vol. I of I.

[4] Rec. Doc. 13, Exhibit E.

[5] State v. Wilson, 824 So.2d 1188 (La. 2002) (No. 2001-K-2300); Supplemental State Rec., Vol. I of I.

[6] Rec. Doc. 13, Exhibit G.

[7] State v. Wilson, 847 So.2d 1258 (La. 2003) (No. 2001-K-2300); Supplemental State Rec., Vol. I of I.

[8] Supplemental State Rec., Vol. I of I; see Rec. Doc. 13, pp. 3 and 6.

[9] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[10] State *ex rel.* Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004) (unpublished); Supplemental State Rec., Vol. I of I.

[11] State *ex rel.* Wilson v. State, 917 So.2d 1090 (La. 2005).

On January 31, 2006, petitioner filed this federal *habeas corpus* application.[12]  In his application, petitioner asserted the following claims:

1.      Petitioner was not informed of his right against self-incrimination;

2.      The trial court improperly denied the challenges for cause of two prospective jurors;

3.      The trial court improperly failed to give a requested curative jury instruction;

4.      Petitioner received ineffective assistance of counsel;[13]

5.      The prosecutor solicited perjured testimony from a witness;

6.      A defense witness was coerced not to testify;

7.      Petitioner was wrongly found to be a multiple offender; and

8.      The trial judge was biased.

In its original response, the state argued that petitioner's federal application was untimely.[14]  The state subsequently filed a supplemental response additionally arguing that petitioner

---

[12]  The application was filed with the United States District Court for the Middle District of Louisiana and subsequently transferred to this Court.  Rec. Doc. 1.

[13]  In his federal application, petitioner lists two ineffective assistance of counsel claims.  The Court has consolidated those two claims.

[14]  Rec. Doc. 11.

failed to exhaust his state court remedies and, alternatively, that his claims were without merit.[15] Petitioner filed memoranda in opposition to both of those responses.[16]

After a full review of the state court record and the parties' submissions, the undersigned issued a report recommending that petitioner's federal application be dismissed as untimely based in part on a finding that the finality date of petitioner's conviction was not affected by his improper filing of a motion for rehearing.[17] The United States District Judge thereafter adopted that recommendation and dismissed the petition.[18] On April 1, 2009, the United States Fifth Circuit Court of Appeals reversed that judgment, holding that, despite the fact that the Louisiana Supreme Court Rules expressly prohibit consideration of applications for rehearing in such cases,

---

[15] Rec. Doc. 16.

[16] Rec. Docs. 13 and 18.

[17] Rec. Doc. 19. The Rules of the Louisiana Supreme Court provide: "An application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ ...." La. Sup. Ct. R. IX, § 6.

[18] Wilson v. Cain, 2007 WL 1853423 (E.D. La. June 26, 2007); Rec. Docs. 21 and 22. In adopting the recommendation that the petition be dismissed as time-barred, the District Judge noted:

> Although Petitioner's claims are clearly time-barred, it is regrettable that Petitioner lost six months waiting for the Louisiana Supreme Court to deny the motion for reconsideration given that the Supreme Court's own rules preclude consideration of such a motion. Because the Supreme Court waited six months to reject a motion that was subject to immediate denial on procedural grounds, Petitioner and others like him could be misled into believing that the court is considering the application for rehearing on the merits. In this case Petitioner's inaction during the six months following the denial of rehearing is the proximate cause of his timeliness problem, but the Supreme Court's failure to expeditiously process and reject a procedurally improper motion could under certain facts lead to a truly unfair result.

if a prisoner nevertheless files such an application, then his state court conviction does not become final for federal limitations purposes until ninety days after the Louisiana Supreme Court denies the rehearing application. Based on that holding, the Court of Appeals found that petitioner's application was timely filed and remanded the case.[19]

In light of the Court of Appeals' order, this Court must now consider the state's alternative defense that petitioner's application is subject to dismissal because he failed to exhaust his state court remedies.

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

The state's argument regarding lack of exhaustion is based on a contention that petitioner did not seek review of his post-conviction claims by the Louisiana Supreme Court.[20] That contention has no merit. In connection with the post-conviction proceedings, petitioner filed with

---

[19]  Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009); Rec. Doc. 31.

[20]  Rec. Doc. 16, pp. 2-4.

the Louisiana Supreme Court a timely supervisory writ of review which was docketed in case number 05-KH-290.[21]

        That said, it is nevertheless apparent that petitioner's federal application is still subject to dismissal for lack of exhaustion. In neither his direct appeal proceedings in case number 2001-K-2300 nor his post-conviction proceedings in case number 05-KH-290 did petitioner present to the Louisiana Supreme Court his claim that the trial court improperly failed to give a requested curative jury instruction. Additionally, it is evident that not all subparts of petitioner's multi-part ineffective assistance of counsel claim were presented to the Louisiana Supreme Court.[22] Therefore, petitioner's federal application is subject to dismissal without prejudice as a mixed petition. See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

        In light of the foregoing, petitioner is not legally entitled to review of his claims. However, the undersigned recognizes that a recommendation to dismiss petitioner's application as a mixed petition would most likely result only in him asking to delete his unexhausted claims, which would in turn lead to this matter once again being remanded for additional review. Therefore, rather than further prolonging this proceeding, it seems that it would be preferable simply to address the

---

[21] A copy of that writ application has been filed into this federal record at Rec. Doc. 33.

[22] Even under the most liberal reading of his writ applications, petitioner did not present to that court his contentions that his counsel was ineffective in failing to move for a post-verdict judgment of acquittal and in failing to object to the prosecutor's misstatement of law, the judge's reference to the attack as a "hate crime," and the intimidation of a defense witness.

substance of petitioner's thoroughly meritless claims and bring this matter to a definitive end.[23]

Accordingly, in the interest of judicial economy, the undersigned elects to follow that course.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but

---

[23] A federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Defendant was an inmate housed at Washington Correctional Institution. On April 4, 1997, defendant was involved in an altercation with two other inmates, Jason Lanier and Ronald Edwards. During the course of the dispute, defendant "knocked" Edwards on the ground and "stomped" on his head. As a result, Edwards was rendered paralyzed on the right side and unable to talk, walk, or control his body functions.[24]

<u>Advisement of the Right Against Self-Incrimination</u>

Petitioner's first claim is that he was not advised of his right against self-incrimination before giving a statement which was later used against him at trial. The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness

---

[24] <u>State v. Wilson</u>, No. 2000 KA 2002, at p. 2 (La. App. 1st Cir. May 11, 2001) (unpublished); Supplemental State Rec., Vol. I of I.

against himself."  U.S. Const. amend. V.  "[T]he Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."  Malloy v. Hogan, 378 U.S. 1, 6 (1964).  In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court held:

> [T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.  In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.

Id. at 467.  The Supreme Court therefore held:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required.  He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.  Opportunity to exercise these rights must be afforded to him throughout the interrogation.  After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.  But unless and until such warnings and waiver are demonstrated by the prosecution at

trial, no evidence obtained as a result of interrogation can be used
against him.

Id. at 478-79.

In the instant case, it is clear that petitioner was not advised of his right against self-

incrimination when being questioned by prison officials regarding his participation in the fight and

that during that questioning he made incriminating statements which were thereafter used against

him at trial. Nevertheless, the Louisiana First Circuit Court of Appeal held that petitioner's rights

had not been violated:

> In his first assignment of error, defendant asserts the court
> erred in denying his motion to suppress his statements made to
> Lieutenants Shannon Stewart and Dealis Williams, Washington
> Correctional Institution officers. The officers investigated the
> altercation between defendant and the two other inmates. Defendant
> contends at the time the officers investigated the brawl, he was in
> custody and should have been informed of his rights under *Miranda*
> prior to being questioned, which did not occur in this instance. The
> trial court found that the investigation was a preliminary investigative
> inquiry and that *Miranda* did not apply. The motion was denied.
> Defendant asserts the court erred in denying his motion to suppress
> this testimony.
>
> Officers Stewart and Williams testified at the suppression
> hearing and at trial. Stewart testified that he responded to notification
> for assistance in a dormitory other than where he was stationed. He
> stated when he arrived at the designated dormitory, one of the other
> officers had separated two inmates, defendant and Lanier and had
> secured the inmates under his arms. Stewart testified that he was
> informed the two inmates had been involved in an altercation. The
> two inmates were handcuffed and taken to two separate rooms where
> a "post-fight interview" was conducted with each inmate. Stewart
> explained that the inmates are normally placed in handcuffs during
> "post-fight interviews" for safety reasons. He further explained that
> "fights" are a very normal occurrence each day at the facility and
> normally do not result in an arrest.
>
> Stewart testified that Williams was present during his
> investigation of defendant. He stated that upon questioning

defendant as to the specifics of the altercation, defendant stated that Lanier, "disrespected him." Stewart asked defendant to elaborate, and defendant stated, "[I] knocked the dude, and then I stomped on him[.]" Stewart asked defendant if the person to whom he was referring was Lanier. Defendant informed Stewart that at the time, there was another person in the dorm. Stewart again asked defendant about the specifics of the altercation, and defendant explained that Lanier was masturbating another inmate next to his bed. Defendant requested that they cease. They did not comply, and defendant hit the guy with his hands, knocked him down, and demonstrated how he "stomped" on the other inmate. Stewart stated that he asked Williams whether he was aware another inmate was involved and the officer responded, "no." Stewart testified that he returned to the dormitory and found Edwards lying on the floor appearing to have a seizure. In addition, Edwards's face was bloody. He testified that he did not read defendant his rights prior to investigating the matter.

Williams's testimony was similar to Stewart's testimony. He also stated that he responded to notification of a problem in defendant's dormitory, and it was his understanding that he was merely investigating an altercation. He stated that Stewart questioned defendant, which was not coerced. He also stated that it was not until defendant had explained the events prior to the altercation that he realized a person other than Lanier was involved and that the other person was actually injured.

Before a confession may be admitted into evidence, it must be affirmatively shown that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Furthermore, if the statement was made during custodial interrogation it must be shown that defendant was advised of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Lucky*, 96-1687, p. 16 (La. 4/13/99), 755 So.2d 845, 855, *cert. denied*, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000). However, *Miranda* warnings are not essential prerequisites to non-custodial, general, on-the-scene interrogation to determine facts relating to whether or not a crime has been committed, or by whom, at least absent a showing that the questioning is past such an investigatory stage. *State v. Overton*, 596 So.2d 1344, 1353 (La. App. 1st Cir.), *writ denied*, 599 So.2d 315 (La. 1992). The admissibility of a confession is a question for the trial court, whose conclusions on credibility and weight of testimony relating to the voluntariness of a confession should not be overturned on appeal

unless they are not supported by the evidence. *Lucky*, 96-1687 at p. 16, 755 So.2d at 855.

Defendant contends irrespective of the fact that he was incarcerated, the investigation was conducted when he was in custody; thus, he should have been informed of his *Miranda* rights. Defendant cites *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), wherein an incarcerated inmate's statements to an Internal Revenue Service agent made during an interview were used to convict him of filing false claims. The agent did not advise the inmate of his *Miranda* rights. And more importantly, he was not informed that the statements could be used against him. The Supreme Court rejected the Government's contention that "tax investigations are immune from the *Miranda* requirements for warnings to be given a person in custody." *Mathis*, 391 U.S. at 4, 88 S.Ct. at 1505.

We find *Mathis* distinguishable from the instant matter. In this case, the inmates were housed in an environment where fights are commonplace. The correctional facility has in place an investigation process to determine how the inmates involved in such matters are to be handled administratively. Sanctions typically include the withdrawal of privileges and placement in solitary confinement. According to Stewart and Williams, after an altercation, the inmates are placed in separate rooms in order to ascertain the precipitating events. Both officers explained that normally these investigations do not result in arrests. Stewart and Williams each testified that he was not present during the fight. It was not until defendant explained that he had "stomped" someone that the officers realized another individual, who had been gravely injured, was involved because Lanier did not appear to have received injuries consistent with defendant's description of having "stomped" someone. Thus, unlike the tax investigations involved in *Mathis* which frequently result in criminal prosecutions, these post-altercation investigations in the prison facility are administrative for the purpose of maintaining order. Defendant was not in custody during this fact-finding investigation. Once the officers realized the grave situation, the investigation ceased. The trial court correctly concluded that *Miranda* does not apply under the facts of this case. And we find no error in the trial court's denial of the motion to suppress the

> statements of the officers. This assignment of error is without merit.[25]

The Louisiana Supreme Court thereafter likewise denied the claim without assigning separate reasons.[26]

As an initial matter, the Court notes that the fact that petitioner was in prison at the time of the questioning is not determinative concerning the issue of whether he was entitled to be advised of his right against self-incrimination. "It is generally accepted that 'a prison inmate is not automatically always in "custody" within the meaning of <u>Miranda</u>.'" <u>United States v. Smith</u>, 7 F.3d 1164, 1167 (5th Cir. 1993) (quoting <u>United States v. Conley</u>, 779 F.2d 970, 973 (4th Cir. 1985), and citing <u>United States v. Willoughby</u>, 860 F.2d 15 (2nd Cir. 1988)).

The reason for that rule was explained by the United States Ninth Circuit Court of Appeals in <u>Cervantes v. Walker</u>, 589 F.2d 424 (9th Cir. 1978). In that case, Cervantes' possessions were searched in connection with his transfer to a different jail cell after a fight. Found among his possessions was "a small matchbox containing a green odorless substance." <u>Id</u>. at 427. Without advising Cervantes of his right against self-incrimination, a correctional officer "opened the matchbox, showed the contents to Cervantes and asked, 'What's this?' Cervantes replied, 'That's grass, man.'" <u>Id</u>. Cervantes argued that his statement could not be used against him at his trial on the resulting drug charge. The Ninth Circuit disagreed, holding:

---

[25]  <u>State v. Wilson</u>, No. 2000 KA 2002, at pp. 2-5; Supplemental State Rec., Vol. I of I.

[26]  <u>State v. Wilson</u>, 824 So.2d 1188 (La. 2002) (No. 2001-K-2300); Supplemental State Rec., Vol. I of I.

–  13  –

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, *supra*, 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted).

In contrast to custodial interrogation, on-the-scene questioning does not require Miranda warnings. Id. at 477-78, 86 S.Ct. 1602. Such questioning enables an officer "to determine whether a crime has been committed or is in progress." Lowe v. United States, 407 F.2d 1391, 1393-94 (9th Cir. 1969).

The question in this case is unique because Cervantes was residing in jail when the questioning occurred. Cervantes relies on Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), for the proposition that any interrogation during prison confinement constitutes custodial interrogation requiring Miranda warnings. We do not read Mathis so broadly. In Mathis, the prisoner was questioned by a government agent about certain tax returns. The government argued that for Miranda to apply, one must be in custody for the matter to which the questioning relates. The Court rejected this contention and held that Mathis was entitled to Miranda warnings. Id. at 4-5, 88 S.Ct. 1503.

To interpret Mathis as Cervantes urges would, in effect, create a per se rule that any investigatory questioning inside a prison requires Miranda warnings. Such a rule could totally disrupt prison administration. Miranda certainly does not dictate such a consequence. "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." Miranda v. Arizona, *supra*, 384 U.S. at 477, 86 S.Ct. at 1629.

Adoption of Cervantes' contention would not only be inconsistent with Miranda but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart. We cannot believe the Supreme Court intended such a result. Thus, while Mathis may have narrowed the range of possible situations in which on-the-scene questioning may take place in a prison, we find in Mathis no express intent to eliminate such questioning entirely merely by virtue of the interviewee's prisoner status.

Cervantes, 589 F.2d at 427.

Nevertheless, it is likewise clear that, depending on the facts presented, Miranda may be applicable to prison interrogations if the prisoner is subjected to coercive, "custodial interrogation." That said, the Cervantes court noted that its normal rule that an interrogation was "custodial" if "a reasonable person would have believed he could not leave freely" was not workable in a prison setting:

> When prison questioning is at issue, however, this "free to leave" standard ceases to be a useful tool in determining the necessity of Miranda warnings. It would lead to the conclusion that all prison questioning is custodial because a reasonable prisoner would always believe he could not leave the prison freely. Once more, we cannot reconcile such a result with the limitations set forth in Miranda.

Id. at 428. Rather, the Ninth Circuit concluded that the issue turned on the degree of restrictions imposed on the prisoner during the interrogation. The court stated:

> The concept of "restriction" is significant in the prison setting, for it implies the need for a showing that the officers have in some way acted upon the defendant so as to have "deprived (him) of his freedom of action in any significant way," Miranda v. Arizona, supra, 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted). In the prison situation, this necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement. Thus, restriction is a relative concept, one not determined exclusively by lack of freedom to leave. Rather, we look to some act which places further limitations on the prisoner.
>
> In defining this concept we adhere to the objective, reasonable person standard and the same four factors we have employed under the "free to leave" test. See United States v. Curtis, supra, 568 F.2d at 646. Therefore, the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting. Such a situation requires Miranda warnings.

_Id_.  The United States Fourth Circuit Court of Appeals held that the Cervantes approach "best reconciles Mathis and Miranda in the unique context of prisons and the problems peculiar to their administration."  United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985).

To this Court's knowledge, the United States Fifth Circuit Court of Appeals has neither expressly adopted nor rejected the analysis used by the Fourth and Ninth Circuits in these types of cases.  However, if the analysis were found to be applicable, then petitioner's Miranda claim would have no merit.  Although petitioner was removed from the dormitory in handcuffs for the post-fight interview, it is apparent that those precautions were taken to remove him from the hostile environment and to ensure the safety of the officers and others; there is simply no indication that these actions were in any way intended to be, or interpreted by petitioner as, coercive.  Moreover, petitioner was not confronted with evidence of his guilt in the attack on Edwards or even asked about that attack; on the contrary, Stewart was not even aware that Edwards had been attacked until petitioner mentioned that fact.  There is simply no evidence that the interview was anything more than a normal noncriminal, fact-finding investigation of the sort routinely conducted following a prison fight.  Therefore, even under the analysis adopted by the Fourth and Ninth Circuits, petitioner would have no viable Miranda claim.

Ultimately, of course, it is of no moment whether the United States Fifth Circuit Court of Appeals would adopt the Cervantes approach because federal _habeas corpus_ relief may not be granted based solely on such analyses formulated by the federal Courts of Appeals and District Courts.  Rather, the AEDPA provides that such relief may granted only where the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established

Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). In this case, petitioner does not identify a United States Supreme Court ruling which squarely shows that the state court incorrectly rejected petitioner's claim, and this Court is aware of no such ruling. Where the jurisprudence of the United States Supreme Court "give[s] no clear answer to the question presented, let alone one in [petitioner's] favor," it simply cannot be said that a state court's ruling impermissibly ran afoul of clearly established federal law for purposes of § 2254(d)(1). Wright v. Van Patten, 128 S.Ct. 743, 747 (2008). Accordingly, pursuant to the AEDPA's deferential standard, the Court finds that petitioner's claim must be rejected.

### Challenges for Cause

Petitioner's second claim is that the trial court improperly denied the challenges for cause of two prospective jurors. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> Defendant next asserts the trial court erred in denying two challenges for cause of prospective jurors, Lisa Cooper and Antoinette Bryant. He contends that Cooper had a belief that testimony by police officers would be entitled to greater credibility. Defendant maintains the jury-selection process prejudiced him because Bryant indicated that she had been a robbery victim and the State failed to rehabilitate her voir dire responses.
> Louisiana Code of Criminal Procedure article 797 provides the grounds for challenges for cause. The article states in pertinent part:

> > The state or the defendant may challenge a juror for cause on the ground that:

> > * * *

> > (2) The juror is not impartial, whatever the cause of the partiality. An opinion or impression as to

the guilt or innocence of the defendant shall not of itself be sufficient ground to challenge a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

\* \* \*

(4)  The juror will not accept the law as given to him by the court ....

In *State v. Lutcher*, 96-2378, p. 5 (La. App. 1st Cir. 9/19/97), 700 So.2d 961, 966, *writ denied*, 97-2537 (La. 2/6/98), 709 So.2d 731, we stated in order to prove there has been error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause, and (2) the use of all his peremptory challenges.  The trial court is vested with broad discretion in rulings on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the court abused its discretion.  *Id.*  Prejudice is presumed when a trial court erroneously denies a challenge for cause and defendant has exhausted his peremptory challenges.  *State v. Cross*, 93-1189, p. 6 (La. 6/30/95), 658 So.2d 683, 686.  Since the record reflects defendant exhausted his peremptory challenges, we need only decide whether the trial court erred in denying his challenges for cause.

The voir dire transcript reveals that Bryant admitted she had been "on the gun end of a hold up" and she felt, "maybe I would be prejudice against."  She further explained, "Well, I guess I just feel like maybe if they have been accused of something once since I was on the receiving end I might be prejudiced and not be fair."  The prosecutor asked whether she could apply the evidence in this case to the law given to her by the judge and not hold it against the defendant, and she replied, "I would try very hard."  The prosecutor then explained the necessity of fairness and a fair jury, and once again asked her if she could apply the facts in this case to the law provided by the court, and she replied, "I probably could."

As to the voir dire of Cooper, the record indicates when asked if she would consider the testimony of police or corrections officers in the same manner as she would consider the testimony of others, she replied that they should be afforded more credibility.  Later the trial judge questioned Cooper and inquired whether she would apply

the law to the facts of the case irrespective of her predisposed feelings.  Cooper stated that she could.

The trial court denied defendant's challenges for cause for both prospective jurors.  And defendant had to use two peremptory challenges on Bryant and Cooper.

The ultimate responses of both Bryant and Cooper show that each was duly rehabilitated.  Each agreed to set aside her personal feelings and to render a verdict based on the evidence presented and the law as provided by the trial court.  We do not find an abuse of the trial court's discretion in denying defendant's challenges of each of these potential jurors.[27]

The Louisiana Supreme Court thereafter likewise denied the claim without assigning separate reasons.[28]

It is clear that "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (quotation marks omitted).  "[R]efusal to grant a challenge for cause is within the discretion of the trial court, and it does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." Sudds v. Maggio, 696 F.2d 415, 416 (5th Cir. 1983).

Moreover, because "[a] state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness," the state court's decisions on such claims must be accorded deference unless the decisions were "based on an unreasonable

---

[27]  State v. Wilson, No. 2000 KA 2002, at pp. 5-7; Supplemental State Rec., Vol. I of I.

[28]  State v. Wilson, 824 So.2d 1188 (La. 2002) (No. 2001-K-2300); Supplemental State Rec., Vol. I of I.

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(2); <u>Soria</u>, 207 F.3d at 242.  Additionally, the state court's factual findings are "presumed to be correct," and petitioner has the burden of rebutting that presumption "by clear and convincing evidence."  28 U.S.C. §2254(e)(1).  In the instance case, it is evident that petitioner has not made these required showings.

During *voir dire*, when Cooper was asked where she would rate police officers on a "credibility scale of one to ten," she responded "ten."[29]  When she was later asked whether she could treat "a police officer or a corrections officer's testimony just like [she] would any others," she replied:

> MS. COOPER:
>         No.
>
> MR. TALLEY [defense counsel]:
>         Okay.  You feel what, because of your friendship and your connection with them you'd tend to –
>
> MS. COOPER:
>         I feel like they should have more credibility.
>
> MR. TALLEY:
>         Just because of who they are?
>
> MS. COOPER:
>         Exactly.[30]

The judge later revisited the issue:

> THE COURT:

---

[29]  State Rec., Vol. IV of V, transcript of November 30, 1998, p. 164.

[30]  State Rec., Vol. IV of V, transcript of November 30, 1998, p. 190.

I'm going to ask you or I'm going to read something to you, "As jurors you alone determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and the weight of their testimony deserves. You should scrutinize carefully the testimony and the circumstances under which the witness testifies. In evaluating the testimony of a witness you must consider his or her ability and opportunity to observe and to remember the matter about which he or she testifies, his or her manner while testifying, and reason he or she may have for testifying in favor of or against the State or the defendant, and the extent to which the testimony is supported or contradicted by other evidence." Now, that has to be applied to every witness. You are to use that law and determine credibility. Now, can you follow those instructions and apply it to every witness that may be called in this case?

MS. COOPER:
Well, I still as I feel, my own personal opinion, a policeman should be able to carry a little more responsibility and credibility towards a story or a situation like this.

THE COURT:
Okay. If I charge you –

MS. COOPER:
Yes, sir. I can hear it and maybe understand but –

THE COURT:
Despite the way you feel, can you take this charge, what the law is, and apply it to the case or do you feel like you can?

MS. COOPER:
Yes, sir. I can.[31]

There is no question that Cooper's initial responses on this issue were cause for

concern. It is nevertheless clear that "[a] potential juror may, however, be rehabilitated by counsel

or the court; and if it becomes apparent that the juror could follow the law in accordance with his

_____

[31]  State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 194-95.

oath and the court's instructions, denial of a challenge for cause would be proper, and the challenged venireman could serve on the jury." <u>Chappell v. Cockrell</u>, No. 01-10248, 2002 WL 971530, at *11 (5th Cir. Apr. 29, 2002).  In light of Cooper's rehabilitation by the trial judge, as well as the highly deferential standard mandated for the review of such claims, it is evident that petitioner has not established that he is entitled to relief based on the failure to excuse Cooper.

As to Bryant, neither federal nor Louisiana law requires that prospective jurors be excused for cause simply because they have been crime victims.  <u>See, e.g.</u>, <u>United States v. Huddleston</u>, 810 F.2d 751, 753 (8th Cir. 1987); <u>State v. Eskano</u>, 779 So.2d 148, 153-54 (La. App. 5th Cir. 2001).  Moreover, although Bryant's responses to questions to rehabilitate her were seemingly equivocal, it must be remembered that the trial judge, unlike this Court, was in a position to observe her demeanor and assess her credibility as she responded.  In light of that fact, this Court cannot say that the trial judge's implicit interpretation of Bryant's equivocal answers as a statement that she could serve impartially was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(2); <u>see</u> <u>United States v. Alexander</u>, 48 F.3d 1477, 1484 (5th Cir. 1995) (in light of the trial judge's ability to observe demeanor and assess credibility, a denial of a cause challenge would not be overturned although the prospective juror responded only that she "believed" should could be fair without a more definite statement).

Moreover, in any event, petitioner's claims also clearly fail for an additional reason. Where a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal *habeas corpus* relief only if he demonstrates that the jury

ultimately selected to try the case was not impartial.  Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988).

Because defense counsel used peremptory challenges to strike both Cooper and Bryant[32] and because

petitioner fails even to allege in this proceeding that the jury ultimately selected was not impartial,

his claim necessarily fails.  Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007), cert. denied,

128 S.Ct. 1444 (2008); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir.

Sept. 2, 2003).

Jury Instructions

Petitioner's third claim is that the trial court erred in failing to give a requested

curative instruction to correct the prosecutor's misstatement of law during *voir dire*.

In this case, petitioner was charged with attempted second degree murder.[33]  During

*voir dire*, the prosecutor erroneously indicated that petitioner could be found guilty of the charged

offense if it was found that he had the specific intent to cause great bodily harm.  When addressing

the first panel, the prosecutor stated:

> Second degree murder is defined in Louisiana Revised
> Statutes 14:30.1, that's just the statute number we use.  This case
> deals with, if it was just second degree murder, the killing of a human
> being and in this case when the offender has the specific intent to kill
> or to inflight great bodily harm.  So, if it was second degree murder
> it would be killing a human being with specific intent to either kill or
> cause great bodily harm.  So, even if you were attempting to cause
> great bodily harm and you killed somebody, it would be second
> degree murder.
> In this case we have an attempt.  An attempt is defined in
> Louisiana Revised Statutes 14:27, and also talks about specific intent.

---

[32]  State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 207 and 210.

[33]  State Rec., Vol. IV of V, Bill of Information.

And it says, somebody is guilty of attempt when he does an act for the purpose of accomplishing his object he is guilty of an attempt to commit the offense. It is immaterial if he actually would have accomplished his purpose. When you look at attempt you have to set forth to do it, it doesn't matter whether you would accomplish your purpose, then you apply the second degree murder statute. That's kind of a shorthand version, the Judge will read you the law at the end. Does everybody kind of understand what we're talking about as far as second degree murder and the attempt?[34]

The prosecutor made similar comments while questioning the second panel of potential jurors.[35]

The problem is that, under Louisiana law, "in order to find a defendant guilty of attempted second degree murder, the State must prove that the defendant had the specific intent to kill. The intent to inflict great bodily harm, while an element of second degree murder, may not be used to support a conviction of attempted murder." State v. Hongo, 706 So.2d 419, 420 (La. 1997).

During the preliminary jury instructions, the judge implicitly corrected the prosecutor's error by instructing the jury that petitioner could be found guilty of second degree murder only if he had the specific intent to kill.[36] In his opening statement, the prosecutor seemed to acknowledge that correction, stating:

Evidence is going to clearly show beyond a doubt that Craig Wilson, because he felt Ronald Edwards disrespected him, attempted to kill Ronald Edwards. You heard the Judge earlier say that attempt second degree murder is a specific intent to kill. The evidence will

---

[34] State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 77-78.

[35] State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 154-55.

[36] State Rec., Vol. V of V, transcript of December 1, 1998, p. 3.

clearly show the specific intent to kill by Craig Wilson on Ronald Edwards because he did not show respect.[37]

In his opening statement, defense counsel then expressly corrected the prosecutor's error:

> As the Judge told you, and in spite of what [the prosecutor] Mr. Hoffstadt said in voir dire, and believe me, I'm not trying to accuse the State of trying to deliberately mislead you or lie to you or anything, but you will have to find beyond any reasonable doubt that Craig Wilson had in his mind the specific intent to kill Ronald Edwards.[38]

After the prosecutor made an objection which was overruled, defense counsel continued:

> As I was saying, you must find, in order to convict Craig Wilson of attempted murder in this case, that he had in his mind the specific intent to kill. Even if you were to find, and I'm not saying that you would, that he had intent to cause great bodily harm, whatever you decide for yourselves what that means, in this case, that is not attempted murder, as you will hear from the Judge. And if you cannot find, beyond a reasonable doubt, that he had in his mind and in his heart the specific intent to kill, then you cannot convict him of attempted murder, and I am confident that you will not be able to find that.[39]

Despite all those corrections, defense counsel continued to press the point at the end of trial by urging the judge to give a curative instruction:

> MR. TALLEY:
> Your Honor. I have submitted a proposed instruction on the issue of specific intent. Specifically, intent to kill, as opposed to specific intent to cause great bodily harm, and given that Mr.

---

[37] State Rec., Vol. V of V, transcript of December 1, 1998, p. 10.

[38] State Rec., Vol. V of V, transcript of December 1, 1998, p. 11.

[39] State Rec., Vol. V of V, transcript of December 1, 1998, p. 13.

Hoffstadt's comments during voir dire, and I'm certainly not accusing the State of trying to deliberately mislead the Jury. I think it was a misstatement of law, and I'm going to request that that instruction be included to reiterate the fact specific intent to cause great bodily harm is not an element of attempted murder or attempted manslaughter.

THE COURT:
I was ready to sustain any objection you had concerning that, and then you, on your opening statement, made reference to the fact that great bodily harm was not part, and I specifically did it in the preliminary instructions to the Jury, read the proper statute with specific intent to kill. I think that it is fairly included. The request is fairly included within the charges of the definitions of the crime charged, and therefore I'm going to deny the request for the proposed instruction.

MR. TALLEY[:]
Yes, Your Honor.

THE COURT:
Unless the State – Does the State have any objection?

MR. HOFFSTADT:
No, he said the same thing in opening statement. We corrected it in our opening statement.[40]

Nevertheless, defense counsel yet again corrected the misstatement in his closing argument.[41] The trial judge then correctly instructed the jury on the law as to the charge and the responsive verdicts.[42]

On direct appeal, the Louisiana First Circuit Court of Appeal rejected petitioner's claim that his rights were violated by the failure to give the requested curative instruction, holding:

---

[40]  State Rec., Vol. V of V,  transcript of December 2, 1998, p. 57.

[41]  State Rec., Vol. V of V,  transcript of December 2, 1998, p. 70.

[42]  State Rec., Vol. V of V,  transcript of December 2, 1998, pp. 82-84.

Defendant contends the jury was improperly informed of the intent element of attempted second degree murder. Specifically, he refers to the prosecutor's misstatement to the jury that specific intent to "inflict great bodily harm" was an element of attempted second degree murder. He further asserts this error was compounded when his attorney failed to object to the prosecutor's misstatement of the law. Defendant also argues the trial court contributed to the error in refusing to provide curative instructions to the jury explaining the correct elements of attempted second degree murder. And he maintains that due to this error, his conviction and sentence should be vacated.

The incorrect intent element of attempted second degree murder was presented to the jury during voir dire by the prosecutor. The prosecutor provided the elements of attempted second degree murder by reading the statutes for second degree murder and attempt to the jury. In reading those statutes, he incorrectly stated one of the elements was specific intent to "inflict great bodily harm." This misstatement of the intent element of attempted second degree murder was repeated by the prosecutor before the second set of prospective jurors.

Prior to trial, the trial judge read the applicable statutes to the jury, where he correctly instructed that second degree murder "is the killing of a human being when the offender has a specific intent to kill." In addition, defense counsel informed the jury that the prosecutor had misstated the elements of second degree murder and explained it was necessary for them to "find beyond a reasonable doubt that [defendant] had in his mind the specific intent to kill [the victim]" during his opening statement. Moreover, defense counsel submitted a proposed jury instruction on the issue of specific intent to the court, requesting that the jury be informed that specific intent to cause great bodily harm is not an element of attempted second degree murder or manslaughter. The trial court denied this request since it had previously read the correct elements of the statute in its preliminary instructions and because defense counsel had advised the jury of the prosecutor's mistake during his opening statement. And the record establishes that defense counsel once again explained the correct elements of attempted second degree murder in his closing statement.

In *State v. Butler*, 322 So.2d 189, 192-93 (La. 1975), our supreme court explained that in order to find a defendant guilty of attempted second-degree murder, the State must prove defendant had the specific intent to kill. The intent to inflict bodily harm, while an

element of second-degree murder, could not be used to support a conviction of attempted murder.[FN1]  While the jury was initially presented with an incorrect statement of the law by the prosecutor, this misstatement was corrected.  Defense counsel pointed out the mistake to the jury and correctly stated the elements during opening statements.  The trial court also correctly instructed the jury of the law.  Indeed, the jury was presented with the correct elements of the offense throughout the trial.  Unlike other cases where error was found when it was the trial court that issued erroneous instructions to the jury, *see e.g. State v. Hongo*, 96-2060, p. 3 (La. 12/02/97), 706 So.2d 419, 420-21 and *State v. Brunet*, 95-0340, p. 4 (La. App. 1st Cir. 4/30/96), 674 So.2d 344, 346, *writ denied*, 96-1406 (La. 11/1/96), 681 So.2d 1258, in this case the misstatement was made by the prosecutor.  Furthermore, corrective measures were taken by defense counsel during the opening statement and by the trial court in instructing the jury.  Therefore, we find no error.  And the trial court did not abuse its discretion by its denial of defendant's request for a special instruction regarding the elements of the offense.  This assignment of error is without merit.

> [FN1] Attempted manslaughter also requires proof of a specif intent to kill.  *State v. Holley*, 528 So.2d 752, 756 (La. App. 1st Cir. 1988), *writ denied*, 536 So.2d 1213 (La. 1989).[43]

This Court agrees.  The prosecutor's fleeting misstatement of law during *voir dire* was repeatedly corrected, and this Court has no doubt that the jurors adequately understood that a specific intent to kill was required to convict petitioner of the crime charged.  No curative instruction was necessary, and therefore petitioner was not prejudiced by the failure to give one.

In light of the foregoing, the Court finds that petitioner has not demonstrated that the state court decision rejecting his claim was contrary to, or involved an unreasonable application of,

---

[43] State v. Wilson, No. 2000 KA 2002, at pp. 7-9; Supplemental State Rec., Vol. I of I.

clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

<u>Ineffective Assistant of Counsel</u>

Petitioner next claims that his trial counsel was ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Id</u>. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. <u>Id</u>. Petitioner bears the burden of proof when asserting such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).

To prevail on the deficiency prong of the <u>Strickland</u> test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993)

(quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to a state court decision denying such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state courts' rulings rejecting these claims.

Petitioner first claims that defense counsel should have requested a special instruction on the offense of second degree battery and argued that petitioner was, at most, guilty of that

offense.  When petitioner asserted this claim in the post-conviction proceedings,[44] the state district

court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present

in this case."[45]  Without assigning additional reasons, the Louisiana First Circuit Court of Appeal

and the Louisiana Supreme Court likewise denied relief.[46]

To the extent that petitioner is contending that counsel should have moved to have

"guilty of second degree battery" added as a responsive verdict in this case, that motion would have

been futile because he was charged with attempted second degree murder.[47]  Louisiana law provides:

A.  The *only* responsive verdicts which may be rendered when the
indictment charges the following offenses are:
....
4.  Attempted Second Degree Murder:

Guilty.
Guilty of attempted manslaughter.
Guilty of aggravated battery.
Not guilty.

La.C.Cr.P. art. 814(A)(4) (emphasis added).  "While the trial court may 'exclude' one of the listed

responsive verdicts, *it cannot add to their number*."  <u>State v. Square</u>, 433 So.2d 104, 109 (La. 1983)

(emphasis added); <u>see also</u> <u>State v. Thibodeaux</u>, 380 So.2d 59, 60 (La. 1980); <u>State v. Simmons</u>, 357

---

[44]  The Louisiana First Circuit Court of Appeal declined to address this claim when it was first asserted on direct appeal.  <u>State v. Wilson</u>, No. 2000 KA 2002, at p. 10; Supplemental State Rec., Vol. I of I.

[45]  Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[46]  <u>State *ex rel.* Wilson v. State</u>, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), <u>writ denied</u>, <u>State *ex rel.* Wilson v. State</u>, 917 So.2d 1090 (La. 2005).

[47]  State Court Rec., Vol. IV of V, Bill of Information.

So.2d 517, 518 (La. 1978). Because the trial court was without authority to include a responsive verdict of "guilty of second degree battery," counsel was not ineffective in failing to move the court to do so. United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

To the extent that petitioner is merely claiming that counsel was ineffective in failing to request a jury instruction on second degree battery, that claim also has no merit. Under Louisiana law, a judge is allowed in some circumstances to instruct the jury on an offense which is not included as responsive verdict. See State v. Marse, 365 So.2d 1319, 1323 (La. 1978) (allowing jury instructions on nonresponsive verdicts if there is evidence from which the jury could have inferred that defendant committed that offense and if the requested charges do not require qualification, limitation, or explanation and are not included in other charges to be given); see also State v. Bailey, 664 So.2d 665, 672 (La. App. 3rd Cir. 1995); State v. Williams, 606 So.2d 1387, 1389 (La. App. 2nd Cir. 1992). Nevertheless, even though it appears that the court, upon request, could have given an instruction on second degree battery, counsel's failure to make such a request did not render him ineffective for the following reasons.

The defense presented at trial was that petitioner could not be convicted of *any* of the responsive verdicts. Defense counsel argued that petitioner could not be convicted of attempted second degree murder or attempted manslaughter because the state failed to prove that he had the

specific intent to kill the victim.[48]  Defense counsel further argued that petitioner could not be convicted of aggravated battery because no "dangerous weapon" was used in the fight.[49]  Therefore, defense counsel argued that the jury must reach the verdict of not guilty.[50]

Petitioner does not explain, and this court fails to see, how a jury instruction on second degree battery, an offense of which petitioner could not be convicted because it was not a responsive verdict, would have in any way benefitted the defense.  If anything, such an instruction would have been confusing.  In that there was no benefit to such an instruction, counsel was not deficient in failing to request one and no prejudice resulted from that decision.

To the extent that petitioner is arguing that his Sixth Amendment rights were violated because he never consented to counsel's strategy not to argue that petitioner's actions amounted to, at most, second degree battery, that claim fares no better.  Even if it is assumed that occurred[51] and that a defense counsel performs deficiently by failing to obtain his client's consent to a particular trial strategy, an assumption which is by no means invariably true,[52] a *habeas* petitioner still is not

---

[48]  State Rec., Vol. V of V, transcript of December 2, 1998, pp. 70-71 and 73.

[49]  State Rec., Vol. V of V, transcript of December 2, 1998, pp. 71 and 73-74.

[50]  State Rec., Vol. V of V, transcript of December 2, 1998, p. 74.  To the extent that petitioner appears to be contending that defense counsel conceded petitioner's guilt to any of the responsive verdicts, that contention is obviously false.

[51]  However, it must be noted that petitioner has presented no evidence whatsoever in support of his bald allegation that he did not consent to the strategy employed.

[52]  "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy.  That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision."  Florida v. Nixon, 543 U.S. 175, 187 (2004) (citation and quotation marks omitted); see also Simms v. Cain, Civil Action No. 07-966, 2008 WL 624073, at *23 n.36 (E.D. La. Mar. 4, 2008).

entitled to relief unless he can establish resulting prejudice. <u>Haynes v. Cain</u>, 298 F.3d 375, 382-83

(5th Cir. 2002). Based on the strength of the prosecution's evidence, petitioner has failed to

establish that he would have been acquitted had such a defense been employed. Consequently, he

cannot show that it was objectively unreasonable for the state court to conclude that he was not

prejudiced. <u>See</u> <u>id.</u> at 383.

Second, petitioner claims that his Sixth Amendment rights were violated when he was

denied the counsel of his choice. On direct appeal, the Louisiana First Circuit Court of Appeal

rejected that claim, holding:

> Defendant urges that he was denied the right to counsel of
> choice, which is reversible error. He explains that on the day prior
> to trial, he was informed his family had obtained a private attorney
> for his defense, and he desired to change counsel. He maintains that
> his intent was conveyed to his court-appointed counsel, who
> subsequently orally requested a motion to continue on the morning
> trial was to begin, which was denied. Therefore, defendant asserts
> the trial court erred in denying his motion to continue in order to
> retain his counsel of choice.
>
> Initially, we note a motion for a continuance is required to be
> written and allege the specific grounds upon which it is based, see La.
> C.Cr.P. art. 707, although where the occurrences that allegedly make
> the continuance necessary arise unexpectedly, and defense counsel
> had no opportunity to prepare a written motion, an appellate court
> may review the denial. *State v. Spradley*, 97-2801, p. 4 (La. App. 1st
> Cir. 11/6/98), 722 So.2d 63, 67, *writ denied*, 99-0125 (La. 6/25/99),
> 745 So.2d 625. The granting or denial of a motion for continuance
> rests within the sound discretion of the trial court, and its ruling will
> not be disturbed on appeal absent a showing of a clear abuse of
> discretion. *State v. Spencer*, 444 So.2d 354, 356 (La. App. 1st Cir.
> 1983), *writ denied*, 488 So.2d 694 (La. 1986). Whether refusal of a
> motion for continuance is justified depends on the circumstances of
> the case. Generally, the denial of a motion for continuance is not
> reversible absent a showing of specific prejudice. *Spradley*, 97-2801
> at pp. 3-4, 722 So.2d at 67.

The right to counsel of choice in a criminal trial is guaranteed by the United States and the Louisiana Constitutions; however, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. *Spradley*, 97-2801 at pp. 4-5, 722 So.2d at 67. The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. *State v. Lee*, 364 So.2d 1024, 1028 (La. 1978). The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. *State v. Seiss*, 428 So.2d 444, 447 (La. 1983). Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for continuance made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. *Spradley*, 97-2801 at p. 5, 722 So.2d at 67.

According to the minutes, defendant's appointed counsel appeared in court with him on a motion for bill of particulars, discovery, and inspection on January 26, 1998. Yet, his trial did not start until December 1, 1998. On November 30, 1998, a hearing for defendant's motion to suppress took place and the jury was impaneled. And while defense orally sought to continue defendant's trial for various other reasons, which the court denied, defendant never mentioned his desire to hire a private attorney. Although a criminal defendant has the right to counsel of choice, on the day of trial the decision whether to allow a continuance to obtain new counsel rests within the discretion of the trial court. At the time defendant requested to change counsel, the jury had been impaneled and the trial was ready to commence. Defendant had ample time prior to trial to acquire private counsel. We conclude the trial court did not abuse its discretion in denying defendant's oral motion for a continuance. This assignment of error is without merit.[53]

---

[53] <u>State v. Wilson</u>, No. 2000 KA 2002, at pp. 11-13 (footnote omitted); Supplemental State Rec., Vol. I of I.

Petitioner again asserted the claim in the state post-conviction proceedings. The state district court also denied relief,[54] and petitioner's related writ applications were then denied by the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.[55]

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' [The United States Supreme Court has] previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). That said, the Supreme Court has further acknowledged that "the right to counsel of choice is circumscribed in several important respects." Id. (quotation marks omitted). Of importance in the instant case, the Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice ... against the demands of its calendar." Id. at 152. Accordingly, the Supreme Court has expressly held:

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.

Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quotation marks omitted).

---

[54] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[55] State ex rel. Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State ex rel. Wilson v. State, 917 So.2d 1090 (La. 2005).

Accordingly, it is clear that "[t]he Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant's *fair or reasonable opportunity* to obtain counsel of the defendant's choice." United States v. Hughey, 147 F.3d 423, 428 (5th Cir. 1998) (emphasis added); see also Powell v. Alabama, 287 U.S. 45, 53 (1932) ("[A] defendant should be afforded a fair opportunity to secure counsel of his own choice."). The United States Fifth Circuit Court of Appeals has explained:

> [F]ailure to obtain counsel within a reasonable time may operate as a waiver of that right [of a defendant to secure representation of his own choosing].
> After a defendant has been given a fair or reasonable opportunity to obtain counsel of choice, the decision to grant or deny a continuance to permit a further opportunity to do so rests within the broad discretion of the trial court.

Neal v. Texas, 870 F.2d 312, 315 (5th Cir. 1989) (citation omitted). The Fifth Circuit has further explained:

> While what is a "fair or reasonable opportunity" depends upon all the surrounding circumstances, some factors to be considered include: (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

Gandy v. Alabama, 569 F.2d 1318, 1324 (5th Cir. 1978).

When considering the totality of the circumstances here, it is clear that the trial judge acted properly in denying another continuance in this case for several reasons.

First, the bill of information was filed August 19, 1997,[56] petitioner was arraigned on November 14, 1997,[57] and the trial in this case was originally set for February 2, 1998.[58] Because several continuances were granted, the matter did not actually go to trial until November 30, 1998. During that extended period of time, petitioner was represented by appointed counsel and never once mentioned that he instead preferred to retain counsel. If that was indeed his true desire, he clearly had over a year to make that desire known and to retain counsel.

Second, there is no indication that petitioner had in fact taken any steps to secure counsel; rather, it appears that at the eleventh hour he was simply seeking an open-ended delay.

Third, a continuance would have imposed a clearly undue inconvenience on the witnesses, opposing counsel, and the court. At the time petitioner first made known his desire to retain counsel, *voir dire* had been completed, the jury had been selected, and the trial was moments from commencing.

Fourth, and most importantly, it is clear from the record that the motion was made in bad faith. The prior day before *voir dire*, defense counsel's request of a continuance to perform further investigation was denied.[59] He then requested a continuance because petitioner was unhappy with the clothes he was provided to wear during trial. That request was likewise denied.[60] Petitioner

---

[56]  State Rec., Vol. IV of V, Bill of Information.

[57]  State rec., Vol. IV of V, minute entry dated November 14, 1997.

[58]  State Rec., Vol. IV of V, minute entry dated November 14, 1997.

[59]  State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 2-5.

[60]  State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 44-45.

then tried to delay the proceedings through various antics which eventually required that he be removed from the proceedings.[61]  It is evident that petitioner was simply trying to delay the proceedings in bad faith through any means possible.  Such abusive behavior need not be countenanced.  As the Fifth Circuit has explained:

> The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.  It is a right and a proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench.  A defendant cannot assume that the right to choose counsel affords the right to obtain a delay at his whim and caprice, or to obtain a reversal because he was unable to frustrate justice.

Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978) (footnote and quotation marks omitted).

In summary, while petitioner had the fundamental right to a reasonable opportunity to obtain counsel of his choice, he had that opportunity in this case.  When he failed to attempt to avail himself of that opportunity until after the jury was already selected, his time to exercise that right had clearly passed.  At that point, he did not have the right to postpone the trial indefinitely, at the expense of the court, its schedule, the government, the jurors, the witnesses, and the orderly administration of justice.  Accordingly, the state court's decision denying this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.

Petitioner next claims that his counsel was ineffective in failing to secure the presence of available witnesses.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

---

[61]  State Rec., Vol. IV of V, transcript of November 30, 1998, pp. 45 and 47-55.

Defendant's contention that defense counsel was ineffective because he failed to consult and secure the presence of all witnesses to the incident which led to the offense ... fails to meet the ***Strickland*** requisites.

Prior to trial, defense counsel explained that he had interviewed four witnesses whose versions of the events that occurred on the day of the offense were consistent with defendant's. He requested the court to continue the trial in order to interview all of the residents of the defendant's dorm, approximately sixty persons. Counsel conceded that most of the sixty residents would have been out of the dorm at the time of the offense and would not have witnessed the altercation. Because the State objected, noting that defendant's trial had already been continued on five previous occasions, the trial court denied defense counsel's motion.

On appeal, defendant does not specify which persons absent from trial were necessary to present his defense or the substance of their testimony. The record establishes that defense counsel interviewed four witnesses. All these witnesses corroborated defendant's version of events, and their testimony was presented to the jury. Defense counsel duly attempted to have the case continued to interview other potential witnesses although the trial court denied his request. We do not find defendant's case was prejudiced by the absence of the unspecified witnesses. Thus, defendant has failed to meet his burden of proving his court-appointed attorney was ineffective assistance of counsel under ***Strickland***. This assignment of error is without merit.[62]

When petitioner again asserted the claim in the state post-conviction proceedings, the state district court denied relief, finding that "neither prong of the Strickland v. Washington test is present in this case."[63] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied relief.[64]

---

[62] State v. Wilson, No. 2000 KA 2002, at p. 11; Supplemental State Rec., Vol. I of I.

[63] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[64] State ex rel. Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State ex rel. Wilson v. State, 917 So.2d 1090 (La. 2005).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Id. (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)). In connection with the instant application, petitioner has never even identified the proposed witnesses, much less provided any evidence whatsoever showing that they would have testified at trial and that their testimony would have been favorable to the defense. Accordingly, this claim necessarily fails.

Petitioner also makes a related claim that his counsel was ineffective in failing to perform an adequate pretrial investigation. When petitioner asserted this claim in the post-conviction proceedings, the state district court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present in this case."[65] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[66]

To the extent that petitioner is arguing in this claim that counsel was ineffective in failing to interview all potential witnesses, that claim is simply a variation on the foregoing claim and must likewise be denied. To the extent that he is claiming the pretrial investigation was inadequate in other respects, a petitioner asserting a claim for inadequate investigation bears the

---

[65] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[66] State ex rel. Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State ex rel. Wilson v. State, 917 So.2d 1090 (La. 2005).

burden to provide factual support as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).   In the instant case, petitioner has brought forth *no* evidence to show that further investigation would have revealed any information whatsoever which would have been beneficial to the defense.  Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation.

Fifth, petitioner claims that his counsel was ineffective in failing to object to the prosecutor's misstatement of law.  On direct appeal, after correctly setting forth the Strickland standard, the Louisiana First Circuit Court of Appeal rejected this claim, holding:

> While defendant correctly notes that his attorney failed to object when, during voir dire, the prosecutor misstated the law regarding attempted second degree murder, we do not find the deficient performance prejudiced the defense.  As we explained above, the jury was subsequently presented with the correct statement of the law on several occasions throughout the trial.  Defense counsel not only presented the correct elements of attempted second degree murder and attempted manslaughter, he also pointed out the State's mistake to the jury.  Furthermore, defense counsel requested the court to make a special instruction to the jury.  And while that request was denied by the trial court, it was nevertheless made by defendant's attorney.  We find that defense counsel's subsequent actions cured his initial failure to object to the misstatement of law, and did not prejudice the defense.[67]

As discussed at length earlier in this opinion, the prosecutor's misstatement was repeatedly and adequately corrected at trial.   Therefore, even if defense counsel performed

---

[67] State v. Wilson, No. 2000 KA 2002, at p. 10; Supplemental State Rec., Vol. I of I.

deficiently in failing to object at the time the misstatements were made, petitioner ultimately suffered no prejudice. Accordingly, this claim necessarily fails.

Sixth, petitioner claims that his counsel was ineffective in failing to object to evidence in the multiple offender proceedings. Specifically, petitioner alleges that defense counsel "allowed the introduction of a pen-pack which was incomplete and did not contain duly authenticated documentation to establish that he was one and the same person who committed the prior offense."[68] When petitioner asserted this claim in the post-conviction proceedings, the state district court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present in this case."[69] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[70]

At petitioner's multiple offender proceeding, a certified "pen pack" regarding his prior conviction was admitted into evidence.[71] An expert witness testified that he had taken petitioner's fingerprints earlier that day and found that those fingerprints matched the ones included in the "pen pack."[72]

---

[68] Rec. Doc. 1, supporting memorandum, p. 33.

[69] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[70] State ex rel. Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State ex rel. Wilson v. State, 917 So.2d 1090 (La. 2005).

[71] State Rec., Vol. V of V, transcript of May 4, 1999, p. 2.

[72] State Rec., Vol. V of V, transcript of May 4, 1999, pp. 9-10.

Petitioner fails to explain how he believes that the "pen pack" relating to the prior conviction was "incomplete." Obviously, petitioner's conclusory, unexplained allegation is insufficient to prove that his counsel performed deficiently in failing to object to the introduction of the "pen pack."

The Court further notes that at trial petitioner testified under oath that he was incarcerated based on a conviction for attempted armed robbery at the time the instant crime was committed.[73] Therefore, there is no question that petitioner was in fact a second offender and eligible to be sentenced as such under Louisiana law. Accordingly, he can not show the required prejudice to support his claim.

Seventh, petitioner claims that his counsel was ineffective in failing to object to the reference by the judge at the original sentencing to the instant crime as a "hate crime." When petitioner asserted this claim in the post-conviction proceedings, the state district court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present in this case."[74]

In connection with this claim, petitioner complains that he was not charged with a "hate crime" in the technical, legal sense. While that is true, it is evident from the context that the judge did not use the phrase in that sense. As he explained in the post-conviction proceedings:

> The defendant was not charged, nor his sentenced [sic] subjected to statutory enhancement for a hate crime. However, Article 894.1 of the Code of Criminal Procedure allows the Court to consider any other aggravating circumstance. The defendant committed this crime against a person because that person was homosexual. This is a hate

---

[73] State Rec., Vol. V of V, transcript of December 2, 1998, pp. 42-43.

[74] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

crime as far as that term would relate to aggravating circumstances making this a more heinous crime than others. When a person commits a crime on another person because that person is different from him and in a hateful and despicable manner, the Court certainly can consider that in its sentence and did so.[75]

Moreover, in any event, it is evident that the judge's comment was not determinative in sentencing. Rather, it is clear that the court imposed the maximum sentence based on the totality of the circumstances, including the fact that petitioner was a career criminal convicted of a unimaginably brutal and heinous crime. At the original sentencing, the judge stated:

I find first that there is an undue risk that during any period of suspended sentence or probation, even if the defendant was eligible for such, the defendant would commit another crime.

I find that the defendant is in need of correctional treatment and a custodial environment that can be provided most effectively by his commitment to an institution. I find that a lesser sentence would deprecate the seriousness of the defendant's crime.

I find that the offender's conduct during the commission of this crime manifested deliberate cruelty to the victim.

I find that the offender used threats of an actual violence in the commission of this offense.

I find that the offense resulted in significant, permanent injury to the victim of this crime.

I find that the defendant was persistently involved in similar offenses not already considered as part of any multiple offender – well, the multiple offender petition hasn't been gone forward with, but the defendant has been involved in a history of crime all of his life.

Any other aggravating circumstances, I find that in this case in addition to the other aggravating circumstances that are listed and set forth, this is in effect a hate crime in the true and complete sense of the word hate.

I find no mitigating circumstances or factors whatsoever and nothing to excuse or justify the defendant's criminal conduct.

---

[75] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

The Court is cognoscente [sic] that a maximum sentence is justified only when two things occur, number one, the worst type of crime and number two, the worst type of offender. Looking at those, this is the worst type of crime. The victim has very little life whatsoever after the beating that he got. He cannot walk, can barely talk, can barely recognize his family members. Death would probably have been a better result for this particular victim.

The victim's family, at least death would have allowed them to recover, but lying in the condition that this victim is in doesn't allow for recovery by these victims. Every day they are reminded and feel the pain.

Our prisons have to be safe. I have sentenced many people, they must pay for their criminal actions however, they are still humans, are entitled to their inalienable rights including the right to live and to have some degree of dignity in life. Mr. Wilson has his life, this victim does not have any life that has any dignity left. This behavior of the defendant has in his protection of his turf, destroyed the dignity of that life.

The facts showed that the defendant not only avenged a slight he jumped, and jumped, and jumped, and jumped on the head of the victim. The crime was exceedingly cruel and wanton. The defendant's explanation was ridiculous and he expected that the jury and this Court had just fallen off the turnip truck late yesterday. This is the worst type of offender.

I have gone through in full what the defendant has as far as a criminal history, just to sum up in juvenile delinquency from the age of ten, five juvenile felony dispositions and thirteen (13) misdemeanor juvenile dispositions or arrests. Only between two and and three years as an adult out of the penal system and during that two or three year period he had nine felony arrests, and note almost everything, fourteen (14) different arrests in his life have been for acts of violence.

There are some individuals that justice absolutely demands must be away from society, this defendant is the personification of that individual.[76]

---

[76] State Rec., Vol. V of V, transcript of January 25, 1999, pp. 4-6.

When subsequently resentencing petitioner as a multiple offender, the judge expressly incorporated those findings by reference.[77]

In rejecting petitioner's claim on direct appeal that his sentence was excessive, the Louisiana First Circuit Court of Appeal observed:

> The trial court's comments prior to sentencing indicate it carefully reviewed the factors relevant to this case. The court articulated very specific reasoning for the necessity of incarcerating defendant for the maximum term. Considering the severity of the injuries to the victim, defendant's criminal record, and the facts of this case, the court did not abuse its discretion when it sentenced defendant to the maximum term of imprisonment.[78]

In light of the foregoing, it is clear that there was no basis for counsel to object to the judge's passing reference to petitioner's crime as one of hate. Nevertheless, even if an objection might have been well-founded, petitioner cannot establish that he was prejudiced because there is no reasonable probability that the result of the proceeding would have been different if only that objection had been made. For petitioner to suggest otherwise is patently asinine.

Eighth, petitioner claims that his counsel was ineffective in failing to file a motion for post-verdict judgment of acquittal. When petitioner asserted this claim in the post-conviction proceedings, the state district court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present in this case."[79]

---

[77] State Rec., Vol. V of V, transcript of May 4, 1999, p. 13.

[78] State v. Wilson, No. 2000 KA 2002, at pp. 14-15; Supplemental State Rec., Vol. I of I.

[79] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

Under Louisiana law, "[a] post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.C.Cr.P. art. 821(B). The evidence in the instant case included petitioner's inculpatory statement, Lionel Barnes' testimony, and testimony concerning the extensive nature of the victim's injuries. Viewed in a light most favorable to the state, that evidence was clearly sufficient to support petitioner's conviction. Accordingly, a motion for post verdict judgment of acquittal would have been meritless. Counsel cannot be considered ineffective in failing to file a meritless motion. United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Lastly, petitioner claims that his counsel was ineffective in failing to object to the intimidation of a defense witness. When petitioner asserted this claim in the post-conviction proceedings, the state district court rejected the claim, finding that "neither prong of the Strickland v. Washington test is present in this case."[80]

In connection with this claim, petitioner is presumably referring to the trial judge's advising Lionel Barnes that he would face a perjury charge if he took the stand and lied. For the reasons explained in detail later in this opinion, the advisement of Barnes was not improper and,

---

[80] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

therefore, any objection would have been meritless. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

In summary, petitioner has not demonstrated that the state courts' decisions rejecting his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

<u>Perjured Testimony</u>

Petitioner claims that the prosecutor knowingly solicited perjured testimony from William Pierce, Jr. When this claim was asserted in the state post-conviction proceedings, the state district court denied relief, stating that the claim was "clearly not meritorious."[81] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[82]

In connection with this claim, petitioner first contends that Pierce was coerced into testifying. Pierce was incarcerated at the time of the attack; however, he was subsequently released. Petitioner asserts that Pierce was forced to testify for the prosecution because that was "the only thing which [would] allow him to stay free."[83] This assertion is apparently based on Pierce's

---

[81] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[82] State <i>ex rel.</i> Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State <i>ex rel.</i> Wilson v. State, 917 So.2d 1090 (La. 2005).

[83] Rec. Doc. 1, supporting memorandum, p. 17.

comment that he was told that if he didn't appear to testify "they was going to come and get me."[84] However, he later explained that comment related to the fact that he had been subpoenaed to testify:

> Q.    Now, Mr. Talley asked you about the police coming to get you. That's because you were under subpoena?
>
> A.    Yes, under subpoena. Yeah.
>
> Q.    And you didn't want to testify against Mr. Wilson today, did you?
>
> A.    No, I didn't. No.[85]

Accordingly, Pierce was only advised that the subpoena would be enforced, not threatened with wrongful reincarceration.

Petitioner next contends that it is evident that Pierce committed perjury because his trial testimony was inconsistent with his initial statement to prison guards in which he indicated that he did not witness the attack. However, he explained at trial that he was not initially forthcoming to the guards because in prison "[y]ou don't tell everything. There's a code. You don't tell everything."[86] He further explained that, at the time, he had only eight months left to serve and he "wanted to do them as smooth as possible."[87] He also noted:

> Yes, I was [scared]. That's why the inmates in jail that whatever goes on, they don't say it, but I took a chance, because I – I just wanted to let them know what happened, and because of this, I'm

---

[84] State Rec., Vol. V of V, transcript of December 1, 1998, pp. 32-33.

[85] State Rec., Vol. V of V, transcript of December 1, 1998, p. 47.

[86] State Rec., Vol. V of V, transcript of December 1, 2008, p. 40.

[87] State Rec., Vol. V of V, transcript of December 1, 2008, p. 47.

> testifying against a friend of mine. Ron was a friend of mines too,
> but like in – all inmates, they don't say nothing, but I broke the code,
> and I regret it right now. I really do regret that, breaking the code.[88]

Moreover, in any event, for a petitioner to establish that his constitutional rights have been violated by the introduction of perjured testimony, "it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002). Rather, a petitioner "must show (1) the *actual falsity* of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution *knew* the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (emphasis added). In this case, Pierce repeatedly stated that his testimony was truthful.[89] Petitioner has presented no evidence whatsoever that the testimony was in fact false, much less that the prosecution knew it was false. Accordingly, petitioner has not met his burden of proof with respect to this claim.

Because petitioner's claim presents a mixed question of law and fact, this Court must defer to that decision unless petitioner demonstrates that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Fairman v. Anderson, 188 F.3d 635, 640 (5th Cir. 1999). Clearly, petitioner has made not made that showing in the instant case.

### Prosecutorial Coercion

Petitioner next claims that the prosecutor improperly coerced a defense witness, Lionel Bonds, with threats that he would be charged with perjury. When this claim was asserted in

---

[88] State Rec., Vol. V of V, transcript of December 1, 2008, p. 47.

[89] See, e.g., State Rec., Vol. V of V, transcript of December 1, 2008, pp. 32 and 47.

the state post-conviction proceedings, the state district court denied relief, stating that the claim was "clearly not meritorious."[90] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[91]

The transcript reflects that the prosecutor told the trial judge that it was believed Bonds was going to commit perjury. Based on that information, the judge advised Bonds as follows:

> Mr. Bonds, it's my understanding that the Defendant intends to call you, and the State has indicated that your testimony may be perjury. I'm going to appoint – I'm not making any comment on that at all. What I'm just stating to you is what has been told to me by the parties. That he intends to call you, and if your testimony is not true, then he intends to proceed with perjury charges against you. Now, I am, at this time, appointing you an attorney, Mr. Fontenot, Mr. Jerry Fontenot, standing there to your left. He's going to go over with you this matter, and advise you of all of your rights concerning that, and also of the applicable statutes and all, okay sir?[92]

After meeting with Fontenot, Bonds refused to testify:

> MR. FONTENOT:
> ... I've had a chance to speak with my client. I've gone over with him the transcripts of former statements that he gave, as well as basically him telling me what kind of statements he might give today, that along with the State's apparent representation that if he changes his story or gives a different story, then he could possibly be prosecuted for perjury leads me to recommend that he take advantage of the Fifth Amendment and not testify based on the fact that it could incriminate him. That's what he wants to do. Is that correct?
>
> MR. BONDS:

---

[90] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[91] State ex rel. Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State ex rel. Wilson v. State, 917 So.2d 1090 (La. 2005).

[92] State Rec., Vol. V of V, transcript of December 1, 2008, p. 98.

Yes, sir.

THE COURT:
Okay, and he explained to you your rights, and you do not desire to testify; is that correct?

MR. BONDS:
Yes.[93]

The United States Fifth Circuit Court of Appeals has noted:

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. To make a showing that the government has infringed on this right, the defendant must show that the government's conduct interfered substantially with a witness's free and unhampered choice to testify.

United States v. Thompson, 130 F.3d 676, 686 (5th Cir. 1997) (citation and quotation marks omitted).

The United States Supreme Court has made clear that there is a point at which threats of a perjury charge against a defense witness can exert "such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify," thereby depriving the accused of his right to due process. Webb v. Texas, 409 U.S. 95, 98 (1972). However, the facts in Webb were particularly egregious, with the trial judge *sua sponte* issuing the following personal threat from the bench to the sole defense witness:

Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will

---

[93] State Rec., Vol. V of V, transcript of December 1, 2008, p. 101.

personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.

Id. at 95-96.

Courts have been careful to distinguish Webb in cases involving less egregious facts, such as where a witness decides not to testify as originally intended after being advised or reminded of the criminal ramifications of committing perjury. See, e.g., United States v. Nunn, 525 F.2d 958, 960 (5th Cir. 1976). Further, is it clear that "[i]t is not improper *per se* for a trial court judge or prosecuting attorney to advise prospective witnesses of the penalties for testifying falsely." United States v. Blackwell, 694 F.2d 1325, 1334 (D.C. Cir. 1982); see also United States v. Simmons, 670 F.2d 365, 371 (D.C. Cir. 1982) ("It is hardly a threat for a prosecutor to advise a potential witness, who is telling two stories with respect to a defendant's criminal involvement, that he might be prosecuted for perjury if he testifies falsely."). Additionally, the mere fact that a prosecutor may elect to prosecute a witness for perjury does not inevitably constitute a form of witness harassment, in that "[a] prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct." United States v. Viera, 839 F.2d 1113, 1115 (5th Cir. 1988).

This Court finds that <u>Webb</u> is likewise distinguishable from the instant case. In <u>Webb</u>, the trial judge made it clear that he believed that the defense witness was going to lie if he took the stand and, in that event, the judge would "personally see" to it that the witness was indicted for perjury. The facts here are quite different. There is no evidence that prosecutor personally threatened Barnes; instead, the prosecutor apparently only notified the court that he believed Barnes "may" be intending to commit perjury and that a perjury prosecution would follow *if* Barnes' testimony was not true. The judge made clear that he was not accusing Barnes of intending to commit perjury but wanted only to ensure that Barnes understood the law and his rights and, therefore, appointed independent counsel to advise him.

Moreover, another factor both distinguishes the instant case from <u>Webb</u> and indicates that neither the judge nor the prosecutor was trying to deprive petitioner of his right to present a defense. In <u>Webb</u>, the "threatened" witness was the sole defense witness. In the instant case, petitioner presented numerous witnesses: inmates Tyrone Livis, Miguel Stimley, Tedaryl Griffin, Josem Foster, Simon Frazier, and Capt. Ralph Bratton. There is no allegation that any of those witnesses were given the advisement against perjury. Rather, it is apparent that it was believed that only one witness, Barnes, was about to clearly perjure himself and therefore only he was given the advisement. In light of that fact, one could reasonably conclude that the judge and prosecutor were attempting only to prevent perjury, not to intimidate defense witnesses to prevent them from testifying.

In light of the foregoing, this Court finds no error. Clearly, neither the trial judge nor the prosecutor has to idly stand by when it is believed that a witness is about to commit perjury.

Although the judge or prosecutor may not threaten a witness with punishment for choosing to testify, the Constitution does not forbid a witness from being made aware that, *if* he testifies, he must do so truthfully and will face legal consequences for lying. A criminal defendant has no constitutional right to suborn perjury, and he suffers no due process violation simply because one of his witnesses is dissuaded from committing perjury after being informed in a nonthreatening manner of the legal consequences of such an action.[94]

Petitioner has not demonstrated that the state court decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects the claim.

<u>Multiple Offender Adjudication</u>

Petitioner next claims that he was wrongly found to be a second offender. When this claim was asserted in the state post-conviction proceedings, the state district court denied relief,

---

[94] Additionally, the Court notes that the facts in the instant case are similar to those in <u>Knotts v. Quarterman</u>, 253 Fed. App'x 376 (5th Cir. 2007). In <u>Knotts</u>, the judge advised the witness that he might face a perjury prosecution if he testified, and the judge appointed independent counsel to ensure that the witness understood his rights and the ramifications of committing perjury. After conferring with his counsel, the witness, like Barnes in the instant case, invoked his Fifth Amendment rights and refused to testify. The Fifth Circuit held that there is no due process violation when a witness' failure to testify is attributable solely to the advice of the independent counsel. <u>Id</u>. at 383.

stating that the claim was "clearly without merit."[95]  Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[96]

Petitioner first contends that required fingerprint evidence was lacking to connect the current and predicate offense.  That allegation is patently false.  At the multiple offender hearing, Deputy James Folks, an expert witness, testified that he had taken petitioner's fingerprints earlier that day and found that those fingerprints matched the ones included in the "pen pack" from the predicate conviction.[97]

Petitioner next contends that the evidence was insufficient to prove that he was the same person previously convicted of attempted armed robbery.  However, that fact was established based on the records relating to that predicate conviction and Folks' testimony.  Moreover, as previously noted, petitioner himself testified under oath that he was incarcerated based on a conviction for attempted armed robbery at the time the instant crime was committed,[98] and that testimony was admitted into evidence at the multiple offender hearing.[99]

Petitioner has not demonstrated that the state court decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as

---

[95]  Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[96]  State *ex rel.* Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State *ex rel.* Wilson v. State, 917 So.2d 1090 (La. 2005).

[97]  State Rec., Vol. V of V, transcript of May 4, 1999, pp. 9-10.

[98]  State Rec., Vol. V of V, transcript of December 2, 1998, pp. 42-43.

[99]  State Rec., Vol. V of V, transcript of May 4, 1999, pp. 11-12.

determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise reject the claim.

Judicial Bias

Lastly, petitioner claims that the trial judge was biased. When this claim was asserted in the state post-conviction proceedings, the state district court denied relief, stating that the claim was "clearly without merit."[100] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[101]

Regarding claims of judicial bias, the United States Fifth Circuit Court of Appeals recently noted:

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. However, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. A likelihood or appearance of bias can disqualify a judge as well. A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him.
> Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has acknowledged that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision. Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias.

---

[100] Supplemental State Rec., Vol. I of I, Order with Incorporated Reasons dated April 20, 2004.

[101] State _ex rel._ Wilson v. State, No. 2004-KW-1349 (La. App. 1st Cir. Oct. 18, 2004), writ denied, State _ex rel._ Wilson v. State, 917 So.2d 1090 (La. 2005).

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008) (citations, quotation marks, and brackets omitted), cert. denied, 129 S.Ct. 1306 (2009). Therefore, "it is only *clearly established* by Supreme Court precedent that presumptive bias exists in the three circumstances discussed above." Richardson v. Quarterman, 537 F.3d 466, 476 (5th Cir. 2008) (emphasis in original), cert. denied, 129 S.Ct. 1355 (2009).

Because petitioner's allegations against the trial judge in the instant case do not involve any of the established bases for presumptive bias, the instant claim implicates only the prohibition against actual bias. See Buntion, 524 F.3d at 673. However, as one federal court noted:

> On federal habeas review of a state trial judge's conduct, the issue is not the presence of judicial misconduct. Rather, the issue is whether, in the context of the trial as a whole, the judge's behavior rendered the trial so fundamentally unfair as to violate due process. Although due process is presumed to be violated where there is actual bias or a factual basis for bias on the part of the judge, the Court must otherwise presume the judge's honesty and integrity. Judicial rulings alone almost never constitute a valid basis for bias or a partiality motion.

Chamberlain v. Pliler, 307 F.Supp.2d 1128, 1145 (C.D. Cal. 2004) (citations, quotation marks, and brackets omitted).

In the instant case, petitioner opines that the judge suffered from actual bias as evidenced by his stated belief that the victim's killing was a hate crime. As previously explained, the trial judge did not refer to the attack as a "hate crime" in the technical, legal sense, but instead rather in the sense that it was brutal, senseless attack motivated in part by petitioner's feelings of bigotry and hate. Despite petitioner's unconvincing protestations to the contrary, that certainly was a reasonable conclusion to draw. Moreover, in any event, there is no indication that the judge's conclusion was expressed to the jury during trial, in any way affected his rulings at trial, or inappropriately affected petitioner's sentence in light of the numerous other factors cited by the judge at sentencing.[102]

Petitioner has not demonstrated that the state court decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects the claim.

---

[102] The Court is aware that petitioner suggests that he was not in fact motivated by a hatred of homosexuals. Rather, he indicates that the situation here arose only because of the victim's "refusal to take into consideration, my polite request not to commit lewd sexual acts in my immediate presence," and petitioner further opines that his brutal attack was an understandable reaction to the victim's provocation. Rec. Doc. 1, supporting memorandum, pp. 25-28. The Court fails to see how petitioner would have fared better even if the judge had accepted the assertion that the attack resulted from petitioner's reaction to an act of perceived "disrespect" rather than from his hatred. The brutal act of stomping a person almost to the point of death, thereby leaving him partially paralyzed and unable to talk, walk, or control his body functions, over a rather trivial jailhouse tiff over respect hardly seems to be less egregious.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Craig Wilson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-fourth day of June, 2009.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**